UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOAQUIN FRANQUI III, Administrator of the ESTATE
OF JACK FRANQUI IV,                                                          CV-13-5943
                                                                            (JS)(SIL)
                                    Plaintiff,
                    -against-
                                                                            NOTICE OF
                                                                            MOTION
THE COUNTY OF SUFFOLK, SUFFOLK COUNTY                                        TO AMEND
POLICE DEPARTMENT, POLICE OFFICER KAREN                                      COMPLAINTS
GRENIA, AND POLICE OFFICERS JOHN AND JANE
DOES 1-10,

                                    Defendants.
-------------------------------------------------------------------------X
SIMON EARL, NICHOLAS EARL, AND ANNE EARL,

                                    Plaintiffs,

                    -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, POLICE OFFICER KAREN
GRENIA, POLICE OFFICERS JOHN AND JANE
DOES 1-10,

                                    Defendants.
-------------------------------------------------------------------------X

        **PLEASE TAKE NOTICE** that upon the accompanying Affirmation of MirelFisch, Esq.
and the exhibits annexed thereto, and the accompanying Memorandum of Law and Proposed
Amended Complaint, Plaintiffs will  move this Court before the Honorable Judge JoannaSeybert,
at the United States Courthouse for the Eastern District of New York, located at 100 Federal
Plaza, Central Islip, New York, for an Order granting Plaintiffs leave to amend their Complaints
pursuant to Federal Rules of Civil Procedure 15(a)(2) and 15(c)(1)(C), and pursuant to New
York State relation-back principles and tolling provisions.

        **PLEASE TAKE FURTHER NOTICE** that opposition papers, if any, must be filedon or
before February 13, 2015, and that any reply papers by Plaintiffs must be filed on or before
February 23, 2015.

Dated:  Mineola, New York
        January 1, 2015

The Law Office of Anthony M. Grandinette
Attorneys for Plaintiff
114 Old Country Rd, Suite 420
Mineola, New York 11501
(516) 877-2889

By:      _____/s/ MirelFisch_____
         MirelFisch, Esq.


CC: Counsel for Defendants via ECF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOAQUIN FRANQUI III, Administrator of the ESTATE
OF JACK FRANQUI IV,                                                                    CV-13-5943
                                                                                              (JS)(SIL)
                                          Plaintiff,
                     -against-

                                                                                       AFFIRMATION
THE COUNTY OF SUFFOLK, SUFFOLK COUNTY                                IN SUPPORT OF
POLICE DEPARTMENT, POLICE OFFICER KAREN                              MOTION
GRENIA, AND POLICE OFFICERS JOHN AND JANE                           TO AMEND
DOES 1-10,                                                                             COMPLAINTS
                                                                                       BY MIREL FISCH
                                          Defendants.
-------------------------------------------------------------------------X
SIMON EARL, NICHOLAS EARL, AND ANNE EARL,

                                          Plaintiffs,

                     -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, POLICE OFFICER KAREN
GRENIA, POLICE OFFICERS JOHN AND JANE
DOES 1-10,

                                          Defendants.
-------------------------------------------------------------------------X

          **MIREL FISCH,** an attorney admitted to practice law before the United States District

Court for the Eastern District of New York, affirms, upon information and belief, the truth of the

following under penalty of perjury:

     1.  I am an associate ofthe law firm The Law Office of Anthony M. Grandinette, attorneys

for the Plaintiffs, and am familiar with the facts in this case.

     2.  I submit this Affirmation and the exhibits annexed hereto, and the accompanying

Memorandum of Law, in support of Plaintiffs' Motion to Amend their Complaint pursuant to

Federal Rule of Civil Procedure 15(a)(2) and 15(c)(1)(C), and pursuant to New York State

relation-back principles and tolling provisions.

1

**PROCEDURAL HISTORY**

3.   This action arises from the unlawful acts by various members of the Suffolk County Police Department's Seventh Precinct upon Jack Franqui III ("Jack"), and Simon Earl ("Simon"). On January 23, 2013, Jack and Simon were unlawfully stopped and subjected to excessive of use of threatened deadly physical force while the two young men were socializing in front of the Earl home located at 6 Cordwood Path, Shoreham, in broad daylight. The defendants then unlawfully searched and detained Simon, searched his family's home, unlawfully arrested Jack, and used excessive force on him causing him to suffer serious physical injuries. Thereafter, the defendants transported Jack to the Seventh Precinct where he was eventually placed in a holding cell in the cell block area. Defendants then ignored Jack's numerous pleas for medical assistance and threats of suicide, which resulted in his suicide by hanging in the Suffolk County Police Department's Seventh Precinct, despite it being equipped with an electronic video and audio monitoring system. Defendants subsequently harassed and intimidated Simon and his parents, Nick and Anne Earl, over the following months, and repeatedly violated the rights guaranteed to them by the United States and New York State Constitutions and laws.

4.   On April 19, 2013, Jack's father, Jack Franqui IV ("Jack Sr."), on behalf of his son's estate, and Simon, Nick, and Anne Earl, filed Notices of Claims against the County of Suffolk, the Suffolk County Police Department, and Police Officers John and Jane Does, for their unlawful and unconstitutional acts.

5.   Jack Sr. initiated this action on behalf of his son's estate on October 29, 2013 by filing a Summons and Complaint ("Franqui Complaint"). *See* DE 1-2. This action was assigned to the Honorable Joanna Seybert, and the Honorable William D. Wall, Magistrate Judge. *See* DE 1 at 1. Simon, Nick, and Anne subsequently initiated a separate action on February 4, 2014 by filing their Summons and Complaint ("Earl Complaint"). *See* 14-cv-0750, DE 1; 3. That action was assigned to the Honorable Joseph F. Bianco, and the Honorable Gary R. Brown, Magistrate Judge. *See* DE 1 at 1. Both Complaints listed the following defendants: "THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, POLICE OFFICER KAREN GRENIA, POLICE OFFICERS JOHN AND JANE DOES 1-10." *See* DE 1; 14-cv-0750, DE 1.

6.   The defendants in both actions were represented by Suffolk County Assistant County Attorney Arlene S. Zwilling. *See* DE 4 at 10; 14-cv-0750, DE 6 at 12. On April 3, 2014, counsel

2

for both parties in the Earl case appeared for an initial conference before Magistrate Judge Brown. *See* 14-cv-0750, DE 8. At that conference, both parties, as well as Magistrate Judge Brown, agreed that both actions should be consolidated, at least for purposes of discovery, given that they arise out of the identical facts, and because other than the individuals defendants present at the Seventh Precinct on January 23, 2013 while Jack was in their custody and care, both actions involved the identical individual defendants. *See* DE 9; 14-cv-0750, DE 10. Accordingly, all Plaintiffs requested that the actions be consolidated for purposes of discovery. *See id.* That request was granted, and the actions were consolidated "for discovery and trial under 13cv5943 (JS/WDW)." DE 10.

7.   Pursuant to the Magistrate Judge Wall's Scheduling Order, the deadline to move to join new parties or to amend the pleadings was July 28, 2014. *See* DE 6. Although prior to the expiration of that deadline, Plaintiffs had served three document demands upon Defendants, as well as interrogatories upon Suffolk County Police Department and Police Officer Karen Grenia, numerous discovery items remained outstanding, and Defendants had not yet disclosed the identity of all defendants, named as named Police Officers John and Jane Does, in this case. Accordingly, with Defendants' consent, Plaintiffs requested a 90-day extension to file an amended complaint on July 25, 2014, *see* DE 13, and that request was granted on July 30, 2014.

8.   On July 31, 2014, this action was re-assigned from the Magistrate Judge Wall to the Honorable Magistrate Judge Steven I. Locke. *See* docket text dated July 31, 2014.

9.   Plaintiffs filed their Amended Complaint on October 27, 2014. *See* DE 15. The next day, Defendants' counsel stated that she had not consented to Plaintiffs filing an amended complaint, and demanded that Plaintiffs withdraw it immediately. After informing Magistrate Judge Locke as to this issue, *see* DE 16-17, the parties appeared for a conference and Plaintiffs were granted an extension of time to move to amend their Complaints. *See* DE 18.

10. Accordingly, Plaintiffs seek leave to file their Proposed Amended Complaint ("Amended Complaint") accompanied to these papers.

## AMENDMENTS CONTAINED IN PROPOSED AMENDED COMPLAINT

11. Given that Plaintiffs' actions had been consolidated for purposes of discovery and trial under 13-cv-5943, and given that the original Complaints in each action alleged the same facts, Plaintiffs are seeking to file one Amended Complaint, collectively, as opposed to two separate

3

amended complaints containing the same allegations and exhibits, in the interest of simplicity and efficiency. *See* Amend. Compl.

## Parties

12. Plaintiffs' Amended Complaint primarily seeks to identify and name the additional individual members of the Suffolk County Police Department Seventh Precinct, who had originally been named as Police Officers John and Jane Does. The Amended Complaint seeks to name the following additional 14 individuals:

      a.  Captain Alexander Crawford

      b.  Police Officer Nicholas Robbins

      c.  Police Officer Janine Lesiewicz

      d.  Police Officer James V. Rios

      e.  Sergeant Keven E. O'Reilly

      f.  Police Officer Joseph Simeone

      g.  Police Officer George Oliva

      h.  Lieutenant John McHugh

      i.  Police Officer John Boreshesky

      j.  Sergeant John J. Doyle

      k.  Police Officer Brandi McLoughlin

      l.  Police Officer Lorraine Zaleski

      m.  Police Officer David Samartino

      n.  Police Officer Brian Klammer

*See* Amend. Compl. caption,¶¶ 17-30.

## Causes of Actions

13. Given that Plaintiffs seek to file one combined Amended Complaint, the causes of action in the original Complaints are listed in the Amended Complaint as "CAUSES OF ACTION – JACK JR.," *see id.* at 30, and "CAUSES OF ACTION – SIMON, NICK, and ANNE." *See id.* at 37.  These mirror the causes of actions in the original Complaints. *Compare* DE 1 ¶¶ 132-204, *with* Amend. Compl. ¶¶ 248-316, and 14-cv-0750, DE 1 ¶¶ 98-147, *with* Amend. Compl. ¶¶ 317-362.

4

a.  The order in which some of the *Franqui* causes of actions were listed, have been re-arranged.

b.  The 4th and 5th *Franqui* causes of actions were combined. *Compare* DE 1 ¶¶ 138-41, *with* Amend. Compl. ¶¶ 250-51.

c.  The 1st and 2nd *Earl* causes of actions were combined. *Compare* 14-cv-0750, DE 1 ¶¶ 98-101, *with* Amend. Compl. ¶¶ 317-18.

d.  The 3rd and 4th *Earl* causes of actions were combined. *Compare* 14-cv-0750, DE 1 ¶¶ 102-05, *with* Amend. Compl. ¶¶ 319-20.

e.  The 13th and 14th *Earl* causes of actions were combined. *Compare* 14-cv-0750, DE 1 ¶¶ 122-25, *with* Amend. Compl. ¶¶ 339-40.

f.  The 15th and 16th *Earl* causes of actions were combined. *Compare* 14-cv-0750, DE 1 ¶¶ 126-29, *with* Amend. Compl. ¶¶ 341-42.

14. Plaintiffs' Amended Complaint seeks to allege an additional cause of action for malicious prosecution based upon the September 29, 2014 dismissal of the VTL charges Defendant PO Karen Grenia ("Grenia") filed against Simon. *See* Amend. Compl. ¶¶ 335-36.

15. The *Earl* Complaint had alleged a cause of action for slander, in detail. *See* 14-cv-0750, DE 1 ¶¶ 32-37. However, that claim had not been listed independently under "CAUSES OF ACTION." Accordingly, Plaintiffs seek to list that claim under "CAUSES OF ACTION" in the Amended Complaint. *See* Amend. Compl. ¶¶ 357-58.

## **Factual Allegations**

16. Plaintiffs seek to allege several additional facts within the "FACTUAL AND GENERAL ALLEGATIONS" in their Amended Complaint, which have all been alleged or referenced in the original Complaints. These include,

a.  how Jack and Simon met on January 23, 2013, *compare* DE 1 ¶¶ 16-18; 14-cv-0750, DE 1 ¶¶ 16-18, *with* Amend. Compl. ¶¶ 36-41;

b.  why defendants may have unlawfully entered the Earl home, *compare* Amend. Compl. ¶81, *with* DE 1 ¶¶ 110-21; 14-cv-0750, DE 1 ¶¶ 46-60(describing defendants' unlawful entry and search of the Earl home);

5

  c. how Jack was processed at the Seventh Precinct, *compare* Amend. Compl. ¶¶ 105-111, *with* DE 1 ¶ 45 (referencing that Jack was processed in the Seventh Precinct and then placed in a holding cell);

  d. that Jack had attempted to hang himself with a blanket, in addition to attempting to hang himself with his t-shirt, prior to hanging himself with his jeans, *compare* Amend. Compl. ¶¶ 117, 128, *with* DE 1 ¶¶ 54-61; 14-cv-0750, DE 1 ¶ 63 (discussing the fact that the defendants were notice as to Jack's likelihood to commit suicide due to his irrational behavior, repeated threats to commit suicide, and actually attempt to commit suicide by hanging himself with his t-shirt prior to hanging himself with his jeans);

  e. and that PO Joseph Simeone is overheard expressly acknowledging that the defendants were on notice as to Jack's attempted suicide and their duties to monitor him, *compare* Amend. Compl. ¶¶140-43, *with* DE 1 ¶ 70 (alleging that the defendants "knew or should have known that JACK JR. was clearly suicidal and a danger to himself," and the reasons therefore).

17. These additional factual allegations do not create new bases of liability.

18. Given that the VTL charges Defendant Grenia filed against Simon were dismissed on September 29, 2014, Plaintiffs seek to allege these new facts regarding the dismissal, in the Amended Complaint. *Compare* DE 1 ¶¶ 125-30; 14-cv-0750, DE 1 ¶¶ 69-77, *with* Amend. Compl. ¶¶184-201.

## REASON FOR SEEKING AMENDMENT AT THIS TIME

19. Plaintiffs are not seeking leave to amend their Complaints in bad faith, and Plaintiffs did not delay in seeking leave to amend once they learned the identities of the individual Police Officer John and Jane Doe defendants who committed the specific acts alleged in the original Complaints.

20. At the time Plaintiffs initiated their individual actions, they only knew the name of one defendant police officer, Defendant Grenia, because she had falsely issued Simon two tickets for violating the New York Vehicle and Traffic Law.

21. Plaintiffs were aware of many of the unlawful and tortious acts and omissions committed by the individual defendants outside the Seventh Precinct at the relevant times as alleged in the Complaints, based upon their personal observations. Plaintiffs were also aware of many of the

unlawful and tortious acts and omissions committed by the individual defendants inside the Seventh Precinct at the relevant times as alleged in the Complaints, based upon the eyewitness accounts of John Burke.

22. However, without first obtaining discovery from defendants, it was impossible for Plaintiffs to know the identities of the individual Police Officers John and Jane Does, or some of the additional acts and omissions they committed, outside Plaintiffs' presence.

23. Jack, a victim in this case, died while in police custody after being arrested. That distinguishes this case from others where an arrestee is able to obtain information from the Suffolk County Police Department in support of his claims. For example, if Jack had not died in the Seventh Precinct on January 23, 2013, he could have potentially provided names of various police personnel he encountered and would have received numerous documents at his arraignment and throughout the course of his criminal proceeding identifying various SCPD employees.

24. Jack Franqui III ("Jack Sr."), as administrator of his son's estate, was not able to obtain information regarding the identities of the specific SCPD personnel who committed the specific acts and omissions which are alleged in the Complaints, until long after a Notice of Claim was filed, he was examined pursuant to New York General Municipal Law § 50-h, and he initiated this action by filing a Summons and Complaint. *See infra* ¶ 29.

25. Attempts by Jack's father to obtain factual information from the SCPD Homicide Squad and Internal Affairs Bureau, the Suffolk County District Attorney's Office, and the Suffolk County Medical Examiner's Office, all of which were involved in the multiple investigations into the death of his son, yielded no information--all agencies claimed they were not at liberty to disclose information pending the conclusion of their investigations. All those investigations remain open, with the singular exception of the Medical Examiner's Office, whose report was released and fully corroborates Jack's claims of excessive use of physical. *See* Amend. Compl. ¶ 74; Exhibit D.

**DEFENDANTS UNREASONABLY DELAYED IN PRODUCING DISCOVERY WHICH WOULD HAVE IDENTIFIED THE POLICE OFFICER JOHN AND JANE DOE DEFENDANTS**

26. The Suffolk County Attorney's office unreasonably delayed Plaintiffs' 50-h examinations, which delayed their ability to commencethese actions and obtain discovery

7

necessary for them to name the individual SCPD personnel who violated their rights guaranteed to them by the United States and New York State Constitutions and laws.

27. Most of the causes of actions in this case accrued on January 23, 2013. All Plaintiffs then filed Notices of Claims on the County of Suffolk and the Suffolk County Police Department on April 19, 2013. Since that date, the 50-h examinations were repeatedly scheduled, and rescheduled. Given that the Suffolk County Attorney's Office timely noticed the examinations, Plaintiffs were not able to commence their actions until such time as they were examined.

28. The Earls' 50-h examinationswere initially scheduled for July 9, 2013, and Jack Sr.'s examination was initially scheduled for July 11, 2013.On July 5, 2013, Assistant County Attorney Arlene Zwilling postponed these examinations, and they were eventually scheduled for August 21, 2013. The 50-h examination of John Burke, an eyewitness to some of the events which occurred in the Seventh Precinct cell block on January 23, 2013, was also scheduled for August 21, 2013. On that date, Jack Sr., Simon, Nick, and Anne Earl, and John Burke, all appeared at the Suffolk County Attorney's office, along with Mr. Grandinette and I. Once we arrived that morning however, we were informed that the date had not been noted in the County Attorney's calendar, and that the examinations would not be able to proceed. Ms. Zwilling did agree to examine Mr. Burke later that day, and he was examined in the afternoon. *See* Exhibit A.

29. Jack Sr.'s examination was conducted on September 23, 2013. *See* Exhibit B. Accordingly, he initiated this action on behalf of his son's estate on October 29, 2013. *See* DE 1. Defendants Suffolk County, Suffolk County Police Department, and PO Karen Grenia, filed their Answer on November 18, 2013. *See* DE 4.

30. I called the County Attorney's Office several time during the month of November 2013 in an attempt to schedule the Earls' 50-h examinations, and they were eventually scheduled for December 26, 2013. Given that the 50-h examinations had been scheduled for the day after the Christmas holidays, I called the County Attorney's Office on December 18, 2013to confirm that they would be conducted on that date.I was informed that the date had not been entered in the County Attorney's calendar, and to email a confirmation so that the date can be confirmed and calendared. *See* Exhibit C.The next day I was notified that Ms. Zwilling would be unavailable, and was given possible examination dates for the end of January, 2014. *See id.*;Exhibit D.

31. Simon and Nick Earl's examinations were conducted on January 24, 2014, *see* Exhibits E and F, one year after the date of the events which gave rise to the claims in this case, and three

months prior to the expiration of the statute of limitations on numerous state law claims. Simon, Nick, and Anne Earl commenced their action on February 4, 2014, *see* 14-cv-0750, DE 1. Defendants Suffolk County, Suffolk County Police Department, and PO Karen Grenia, filed their Answer on March 5, 2014. *See id.* DE 6.

32. Once these actions were commenced, the Suffolk County Attorney's Office unreasonably delayed producing discovery which would have allowed Plaintiffs to identify the Police Officer John and Jane Doe defendants.

33. On January 29, 2014, I served Ms. Zwilling with a copy of Plaintiff Franqui's First Request for the Production of Documents and Things, *see* Exhibit G, and Plaintiff Franqui's Initial Disclosure Pursuant to Rule 26(a)(1). The Demand requested that responsive documents be produced within 30 days as required by the Federal Rules. *See id.* at 1.

34. If the Franqui First Demand had been complied with in a timely fashion, Plaintiffs would have known the identities of all the Police Officer John and Jane Doe defendants at the outset of this litigation. For example, the First Demand requested all radio communications and transmissions concerning officers responding to, or at the scene of, 6 Cordwood Path, Shoreham, the address of the Earls' home. *See id.* ¶ 1(d-f). These items would have identified the specific SCPD personnel present at the scene of arrest, the time they arrived, and some of the actions they took. The First Demand also requested all reports, notes, prisoner log books, arrest paperwork, and other documents related to the detainment and monitoring of Jack within the Seventh Precinct on January 23, 2013. *See id.* ¶ 1(h-j). These items would have identified who, specifically, came into contact with Jack during his arrest, who, specifically, booked and processed him, and who, specifically, monitored his behavior while he was lodged in the Seventh Precinct holding cell and what they recorded on the "prisoner activity log" pursuant to State law. The First Demand requested all time sheets, logbooks, rosters and sign-in sheets for the Seventh Precinct on January 23, 2013. *See id.* ¶¶ 1(s); 5. These documents would have indicated the name and rank of every SCPD personnel present in the Seventh Precinct at the times relevant to this action. Significantly, the First Demand requested photographs of all SCPD personnel who came into contact with Plaintiffs and with John Burke on January 23, 2013. *See id.* ¶ 1(u-v). These photographs would have enabled Simon and the two contractors present at his home on January 23, 2013 to identify who was present at the scene of arrest, who searched and detained Simon, who assaulted and arrested Jack, and who entered and searched Simon's home. The photographs

would have also enabled Burke to identify whom he witnessed Jack request medical assistance from in the cell block area, to whom Jack made repeated statements to regarding his intent to commit suicide, and which police officers rushed into the cell block area to cut down the t-shirt Jack tied to the cell bars. The First Demand also requested documents and communications regarding Grenia's traffic stop of Simon on April 9, 2013, *see id.* ¶ 20, which would have identified which additional SCPD personnel responded to the traffic stop and unlawfully searched Simon's person, car, and cell phone. Plaintiffs explained all this to Ms. Zwilling. Despite that, she still maintains that some of these requested documents are irrelevant and non-discoverable.

35. Defendants did not comply with Franqui's January 29, 2013 discovery demand. Although Defendants have not yet produced all documents responsive to this demand, to date, my office was able to identify most of the specific Police Officer John and Jane Doe defendants, from the documents responsive to the requests mentioned above which Defendants have produced, *albeit*, on May 6 and July 7, 2014, after the statute of limitations as to most of the pendent state claims which accrued on January 23, 2013, already expired. *See* Exhibits H and I (enclosures thereto intentionally omitted).Notably, the face of many of these documents themselves indicate that they were created and/or preserved on January 23, 2013, approximately 12 months *before* I served Defendants with Franqui's First Demand.

36. The Homicide Report, dated 2/23/13, which was produced on May 6, stated in part that telephone calls had been retrieved and retained. *See* Exhibit J. These telephone calls, which I received on June 16, 2014, *see* Exhibit K, clearly demonstrate the extent of the defendants' knowledge as to Jack's likelihood of committing suicide—PO Simeone is heard in the background of these calls stating that "he was tying the blanket, that's why we don't give them blankets. I don't know why they give them blankets. He was tying the blanket around the, um –." Subsequent to the June 16 production, Ms. Zwilling informed my office that one telephone call had been inadvertently omitted from the prior production. Despite repeated requests, that telephone call has still not been produced. I was however able to hear some of its content when Defendants produced compact discs containing the Internal Affairs Bureau's interviews of Sgt. Kevin O'Reilly and PO Simeone, during which time this telephone call was played. PO Simeone is once again overheard in the background, this time affirmatively acknowledging that Jack required constant supervision, something they nonetheless failed to provide him with. PO

10

Simeone said, "[h]e was tying his blanket to the bars. We took the blanket away from him. [Unintelligible]. They need a PO back there by the cell block with an activity log."

37. This document and audio production  containing the IAB interviews, was received in the mail *on* October 14, 2014. It should be noted that the cover letter for this discovery production is dated August 18, 2014, two months before it was produced. *See* Exhibit L. I do not know if Defendants' counsel inadvertently misdated the cover letter, or if the discovery was for some reason delayed in mailing (like the initial response to the *Franqui* First Demand which was received on April 3, 2014, but dated March 19, 2014). Interestingly, the documents responsive to item (a) on the cover letter state that they were "printed 10/01," *see id.* at 1, 3-4 (top center), and the documents responsive to item (e) on the cover letter state that they were "Printed: 9/4/2014." *See id.* at 1, 5-11 (bottom left). Obviously, the letter was misdated irrespective of the reason, because it could not have been sent on August 18, 2014 prior to the date the materials were printed. Irrespective of the reason, we received these documents on October 14, 2014, 13 days prior to initially filing the Amended Complaint.

38. The first discovery item my office received from Defendants was their *Franqui* Initial Disclosures Pursuant to Rule 26(a)(1)(A), dated March 19, 2014. *See* Exhibit M. No exhibits or documents where attached to this disclosure. This disclosure, however, was wholly insufficient, and did not comply with the Rule 26(a)(1) requirements. Rather than naming every individual likely to have discoverable information "along with the subjects of that information," Ms. Zwilling merely listed 12 names, without any identifying information other than that they should be contacted through the Suffolk County Attorney's Office. *See id.* at 1-2. To this day, I do not know the relevance of several individuals included in this list.I informed Ms. Zwilling that this disclosure was inadequate, several times, including on the record during the parties' initial conference on *Earl* before Magistrate Judge Brown on April 3, 2014.

39. It should also be noted that none of the six individuals who were assigned to the Seventh Precinct desk on January 23, 2013 while Jack was lodged in the cell block and were responsible for his monitoring his wellbeing, one desk sergeant and two desk officers for the 7x3, and 3x11 tours, Sgt. Doyle, and POs McLoughlin and Zaleski, and Sgt. O'Reilly, and POs Simeone and Oliva, *see* Amend. Compl. ¶¶ 113-14, or Lt. Crawford who completed a use-of-force summary on January 23, 2013 where he expressly indicated that he used physical force to restrain Jack, are listed in the Rule 26(a) disclosure. Neither are the names of numerous other SCPD personnel

11

who were interviewed by the SCPD Homicide Squad within days of the incident, and provided written statements to detectives and to the New York State Department of Corrections (in-custody death report), listed in the Rule 26(a) disclosure. Significantly, in every in-custody death within a SCPD precinct, the SCPD Homicide Squad is required to investigate the death, and the NYS Department of Corrections investigates the death as well, including reviewing interviews of the SCPD personnel charged with monitoring the prisoner's well-being. Presumably, Ms. Zwilling knew of this relevant information yet omitted them from her disclosure.

40. The Homicide Squad is employed by the SCPD, a named defendant in this case, and Ms. Zwilling knew of their investigation. Indeed, during her 50-h examination of John Burke on August 21, 2013, she marked as an exhibit a two-page statement of Burke taken by Homicide Squad Detective Alfred Ciccotto on January 23, 2013. *See* Exhibits N and O. The identities of the individuals responsible for monitoring Jack's wellbeing was likewise contained in that same homicide file. She obviously had, or knew of, the Homicide investigation. Additionally, the SCPD Internal Affairs Unit had initiated an investigation into the facts alleged in the *Franqui* Complaint, in 2013. *See* Exhibit P at 1, listing a 2013 case number. This information was clearly available to Ms. Zwilling prior to April 3, 2014, at the time she served her Rule 26(a) disclosure, as evidenced by the subsequent productions my office received. Notwithstanding that fact, and despite Plaintiffs' demands and Defendants' duty to disclose, Plaintiffs did not receive these documents identifying the culpable individuals, until after the state statute of limitations expired.

41. On April 3, 2014, several minutes before the initial conference before Magistrate Judge Brown commenced, I personally served Ms. Zwilling with a copy of the *Earl* First Demand , and Disclosure Pursuant to Rule 26(a)(1)(A). These were almost identical to the First Demand and Rule 26 disclosure, given that both original Complaints alleged the same facts.

42. Prior to serving Ms. Zwilling with the *Earl* First Demand, I had not yet received *any* documents responsive to the *Franqui* First Demand. Defendants' first document production is dated March 19, 2014, *see* Exhibit Q at 7, however I only received it on April 3, 2014, after returning to my office after the initial conference. I received these documents 20 days prior to the expiration of the statute of limitations on most of the state law claims. That initial production was nonetheless insufficient to allow Plaintiffs to adequately identify the specific Police Officer John and Jane Doe defendants named in the Complaints. *See* Exhibit R ¶ 1(g) specifying the specific documents received relevant to the events which occurred on January 23, 2013.

43. Shortly thereafter, I received Defendants' Initial Disclosure Pursuant to Rule 26(a)(1)(A) as to *Earl*. *See* Exhibit S. This, too, was wholly inadequate, did not provide the subject matter of their discoverable information, and omitted names of relevant individuals. Defendant Grenia, during her June 24, 2014 deposition, readily stated, without hesitation, that PO Janine Lesiewicz and PO Nicholas Robbins were among the officers who entered the Earl home on January 23, 2013, and that PO David Samartino and PO Brian Klammer responded to her traffic stop of Simon April 9, 2013 and  looked through Simon's car.

44. On May 1, 2014, Ms. Zwilling conducted the deposition of Darryl Moore, a contractor working for the Earls on January 23, 2013, and an eyewitness to the police officers' misconduct. After the deposition concluded, Ms. Zwilling, Mr. Grandinette, and I discussed numerous outstanding discovery items. *See* Exhibit T. At that time, I also served Ms. Zwilling with the Earls' Interrogatories Directed to the Suffolk County Police Department. Ms. Zwilling objected to the discovery request because it contained more than 25 questions. After discussing what we wanted primarily from the interrogatories –identities of the various SCPD personnel, I agreed to withdraw the request, and substitute it with a request containing not more than 25 questions. I mailed the substituted request for interrogatories to Ms. Zwilling on May 9, 2014. *See* Exhibit U. Ms. Zwilling responded on June 11. *See* Exhibit V. Despite the verification at the back of the response to the interrogatories as to the accuracy of the responses contained therein, *see id.* at 6, most of the responses were clearly false. For example, in response to the first interrogatory which requested information regarding a 911 call, Ms. Zwilling stated that the answer is contained within the 911 previously produced to Plaintiffs. However, Mr. Grandinette and Ms. Zwilling had referenced it in emails as recent as June 11, and the fact that it was still an open issue. *See* Exhibit W. Another example is that two interrogatories asked for the names of the police officers who entered the Earl home on January 23, 2013, and those who were at the traffic stop on April 9, 2013. Ms. Zwilling again stated that the answer is contained within documents previously produced. However, not a single document had been produced which even referenced the fact that officers had entered the Earl home, or that officers had responded to the scene of Grenia's vehicle stop of Simon. *See id.*  Many of the questions posed were answered for the first time on June 24, 2014, when Defendant Grenia readily identified the names of at least two officers who entered the Earl home on January 23, 2014, and provided the names of the officers who responded to her April 9, 2013 vehicle stop of Simon. *See supra* ¶ 43. Plaintiff s were only

13

provided with a copy of the 911 call referenced as a response to the first interrogatory, at the start of Grenia's deposition. *See* Exhibit X at 4-5. Either the time wasn't taken to inquire of the witness facts necessary to answer the interrogatories, or the witness was asked but the information was intentionally withheld. Regardless, Plaintiffs were not provided with this information, which was readily available to Defendants, prior to the expiration of the statute of limitations on the state law claims.

45. In addition to delaying Plaintiffs' ability to learn the identities of the individual Police Officer John and Jane Does in the case, Ms. Zwilling has also delayed responding to subsequent documents demands and other discovery requests. Accordingly, I had filed a letter-motion seeking an order compelling her to comply with, and produce, the request discovery. *See* DE 19. In her response to the letter-motion, Ms. Zwilling misrepresented to the Court that the parties had not conferred regarding outstanding discovery after appearing for a November 19, 2014 conference before Magistrate Judge Locke. *See* DE 20. Accordingly, the motion to compel was denied. *See* docket text dated December 9, 2014.

46. Ms. Zwilling also postponed depositions, and failed to provide availability dates despite numerous requests to do so. On May 2, 2014, I noticed four depositions: Defendant Grenia for June 12, 2014, PO Janine Lesiewicz for June 13, PO Jamie Rios for June 19, and Lt. Alexander Crawford for June 20. These has not been calendared at the County Attorney's Office, and were therefore postponed. *See* Exhibit X at 1. The depositions of Defendant Grenia and Lt. Crawford were ultimately scheduled for June 24, 2014. *See id.* at 2-4. Ms. Zwilling produced those two witnesses on June 24, 2014. However, given that Defendant Grenia's deposition started at approximately 10:00 am and concluded at 5:45 pm, we were unable to depose Lt. Crawford at that time. *See* Exhibit Y at 1, 3, 11.

47. In subsequent telephone conversations between Ms. Zwilling, Mr. Grandinette, and I, we discussed rescheduling the noticed depositions, and scheduling the depositions of the additional individuals listed as Police Officers John and Jane Does. Ms. Zwilling repeatedly advised us that she would check with the individual officers as to their availabilities, however she had not done so for months. On July 29, 2014, Mr. Grandinette emailed Ms. Zwilling a list of individuals Plaintiffs wanted to depose, however we were not provided with availability dates for their depositions. *See* Exhibit Z; *Sse generally* Exhibit AA. Ms. Zwilling never responded to that last email.

14

48. On September 8, 2014, Mr. Grandinette noticed three depositions: PO Joseph Simeone and PO George Oliva for October 23, 2014, and Sgt. Kevin O'Reilly for October 24, 2014. On September 30, 2014, Ms. Zwilling advised Mr. Grandinette and I during a telephone conversation, that Sgt. O'Rielly, PO Simeone, and PO Olivia are represented by independent counsel. *See* Exhibit AA at 1. In a subsequent email the following week she provided me with contact information for attorneys who represented PO Simeone at his Internal Affairs/administrative and grand jury proceedings. *See id.* at 3, and orally provided the contact information for the attorney who represented Sgt. O'Reilly. We have yet to receive the information regarding the independent representation of PO Oliva.

49. After being provided with the contact information for the attorney who represented O'Reilly and PO Simeone at their Internal Affairs interview and grand jury proceedings, Plaintiffs notified the respective counsel. At a November 19, 2014 conference before Magistrate Judge Lock, Ms. Zwilling again represented that these individuals were being represented by specific independent counsel. Accordingly, On November 26, 2014, Mr. Grandinette contacted Anthony LaPinta and Paul Gianelli, the attorneys whom Ms. Zwilling had advised  Plaintiffs, are representing Sgt. O'Reilly and PO Simeone at their depositions, and served them with a copy of the initial Amended Complaint and Notices to Depose their clients in December 2014. *See* Exhibit BB. However Mr. Lapinta immediately informed Mr. Grandinette that they (LaPinta and Gianelli), did not represent Sgt. O'Reilly, were not retained to represent PO Simeone in any civil action, and that the County would be representing Simeone in his capacity as a County employee. *See* Exhibit CC at 1. Thereafter, Ms. Zwilling advised my office in writing that she will not be representing Sgt. O'Reilly, PO Simeone, or PO Oliva, at this time. *See* Exhibit DD.

50. Accordingly, Plaintiffs prepared three Notices to Depose with accompanying testimonial subpoenas, for Sgt. O'Reilly, PO Simeone, and PO Oliva, for February 9, 10, 11. They were served on December 11, 2014, at 1:18 am, and then Mr. Grandinette hand-delivered them to Mr. Grandinette. . They were on by serving a Notice to Depose with a subpoena at the Seventh Precinct

51. In at least two telephone conversations in or about November and December 2014 between Mr. Grandinette and Ms. Zwilling, where I was also present at but did not partake in, Mr. Grandientte attempted to confirm with Ms. Zwilling as to whether the County will be representing Sgt O'Rielly, PO Simeone, and PO Olivia and indemnifying them for potential

15

liability, so that we know how to proceed against them in this action given that the ethics rules prohibit us from contacting represented parties. Ms. Zwilling informed Mr. Grandinette however, that he was not entitled to that information, and that, essentially, the information was irrelevant to Plaintiffs. We do not believe it is a coincidence that the three individuals who were responsible for Jack's wellbeing during the time he commit suicide under their watch, were not listed on Defendants' Rule 26(a) disclosure, were not identified until after the statute of limitation on the state claims expired, and we still cannot depose them given that we cannot contact them directly, yet Ms. Zwilling states that they are not being represented by the County.

52. This is yet an additional example of the unnecessary delays Plaintiffs are confronted with in trying learn the respective roles of the parties and complete discovery. It took months to learn the identities of the players--when their names and roles were immediately available to the County and should have been disclosed Plaintiff at the outset of this litigation.

### THE PROPOSED DEFENDANT WERE ON NOTICE OF THESE ACTIONS AND OF THE ALLEGATIONS AGAINST THEM

53. All the defendants whom Plaintiffs seek to name in their Amended Complaint were on actual notice of the actions, and well as of the specific allegations against them.

54. Notices of Claims were served on the County of Suffolk and the SCPD on April 19, 2013, and the County investigated the allegations contained therein. *See supra* ¶ 4. By that time however, the Homicide Squad had already conducted their investigation and interviewed all the specific individuals involved, and the SCPD therefore knew the identifies of the specific individuals against whom the specific allegations were made. *See supra* ¶¶ 39-40. The SCPD then initiated an Internal Affairs Bureau investigation into the facts alleged in the Complaints in this case, in 2013. *See* Exhibit P at 1, listing a 2013 case number. Additionally, the facts alleged in the Complaints in this case were investigated by a Suffolk County grand jury. Although I do not know how many individuals testified before the grand jury, at a September 29, 2014  meeting with Jack Sr., Mr. Grandinette, Assistant District Attorney Peter Timmons who presented the case to the grand jury, as well as two other individuals, ADA Timmons advised us that several witnesses testified, and that it was lengthy investigation. (He had also issued a grand jury subpoena for John Burke's testimony, to my office, for July 2014. We also confirmed that Mr. LaPinta's office was involved in representing Police Officer Simeone in the context of his IAB interviews on July 21, 2014, and the criminal investigation conducted by the Suffolk District

Attorney's Office). In a telephone conference with ADA Timmons on December 2, 2014, he intimated that the grand jury had issued a report, but that it would remain sealed for at least several more weeks. Accordingly no indictments are forthcoming; however, it appears a grand jury report will be issued in this case. Under these realities it cannot be credibly argued that the proposed defendants did not have actual notice of the allegations against them .

55. Additionally, Defendant Grenia testified during her deposition on June 24, 2014 that after reading the allegations in the Complaints, she discussed the facts with PO Janine Lescewics and PO Robbins, and they told her they entered the Earl home. *See* Exhibit Y at 4-10. PO Grenia even offered their purported reasons for doing so. *See id.*

56. During PO Joseph Simeone's internal affairs interview on July 21, 2014, he expressly stated that ". . . And then I did have an opportunity to read the -- the complaint . . ." *See* Exhibit EE. The interview was produced to Plaintiffs via compact disc, and my office had it transcribed by a licensed stenographer.

57. On February 4, 2014, four months after the *Franqui* Complaint was served at the Seventh Precinct on behalf of Defendant Grenia, PO Cummings, one of the officers who rushed to the cell block when Jack was discovered hanging, *see* Amend. Compl. ¶ 162, accepted service of the *Earl* Complaint on behalf of Defendant Grenia. *See* 14-cv-0750, DE 4. It is highly unlikely that the individual John and Jane Doe Defendants, all of whom were assigned to the Seventh Precinct, were not aware of the actions, *and* the allegations contained in the Complaints, particularly given the specifics facts of the case—that a young man died in their custody within several hours of being brought to their precinct, an event which was subsequently investigated by several agencies.

58. The proposed defendants were certainly on constructive notice of the actions, and of the allegations against them, as the Suffolk County Attorney, the attorney who appeared on behalf of all defendants named in the original Complaints, knew or should have known that they would be named as defendants.

59. Both original Complaints named the following defendants: "THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, POLICE OFFICER KAREN GRENIA, POLICE OFFICERS JOHN AND JANE DOES 1-10," and alleged that "defendants Police Office Karen Grenia . . . and John and Jane Does 1-10 are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law

17

. . ." *See* DE 1 Caption; ¶¶ 9-11; 14-cv-0750, DE 1 Caption; ¶¶ 10-12. They are all therefore entitled to representation by the Suffolk County Attorney pursuant to Chapter 42, Article 1, of the Suffolk County Charter. § 42-3(A) states in relevant party that "the County shall provide for the defense of the employee in any civil action or proceeding in any state or federal court or administrative agency arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting, or in good faith purporting to act, within the scope of his public employment or duties or which is brought to enforce any provisions of Sections 1981 through 1988 of Title 42 of the United States Code . . ." *See* http://ecode360.com/14941883. Accordingly, the Suffolk County Attorney's Office, appearing through the same Assistant County Attorney, Arlene S. Zwilling, Esq., conducted 50-h hearings of Plaintiffs Jack Franqui IV, Simon and Nick Earl, and eyewitness John Burke, *See* Exhibits A, B, E, F, and answered the Complaints on behalf of all named parties. *See* DE 4; 14-cv-0750, DE 6.

60. If the defendants whom Plaintiffs now seek to name would have been individually-named in the original Complaints, the Suffolk County Attorney's Office, by Assistant County Attorney Arlene S. Zwilling, Esq., ("ACA Zwilling") would have appeared on their behalf as well. At the *Earl* initial conference when the issue of consolidation was discussed, *see supra* ¶ 6, ACA Zwilling expressly stated words to the effect of "I don't want my officers to be deposed twice for the events," and accordingly agreed that the two actions should be consolidated for purposes of discovery. *See* DE 10 at 2. Four days later, Ms. Zwilling submitted an offer of judgment on the *Earl* case, on behalf of all defendant. *See* Exhibit FF.

61. Furthermore, after Plaintiffs received Defendants' Initial Disclosure Pursuant to Rule 26(a)(1)(a) which named Karen Grenia, Janine Lesiewicz, Jamie Rios, and Alexander Crawford as individuals with discoverable information, *see* Exhibit S, and after receiving Defendants' response to Plaintiff Franqui's First Demand on or about April 3, 2014, which contained some of the January 23, 2013 arrest paperwork, I served ACA Zwilling with Notices to Depose those witnesses on May 2, 2014. Although the depositions were subsequently postponed, *see* Exhibit X, these individuals, three of whom were named as defendant Police Officer John and Jane Does, would have been represented by ACA Zwilling. Subsequently, on June 24, 2014, in addition to producing Defendant PO Grenia for her deposition, ACA Zwilling produced Captain Alexander Crawford, and would have represented him at his deposition as well. His deposition did not go forward on that date because Defendant Grenia's deposition concluded at 5:45 p.m. *See* Exhibit

Y. *See id.* X at 4. The parties have since then discussed arranging the depositions of all the other individuals whom Plaintiffs seek to name in their Proposed Amended Complaint.

62. Furthermore, the identity of the individual John and Jane Doe defendants whom Plaintiffs now seek to name, were readily identifiable to Defendants and their counsel. The Complaints in both cases, which Defendants' counsel answered, alleged in great detail the acts of each individual John and Jane Doe defendant whom Plaintiffs now seek to name, the approximate time given acts occurred, which precinct Jack had been taken to, and so forth. Defendants' counsel could have easily ascertained their identities at the outset by requesting that information from named defendant Suffolk County Police Department, the employer of the John and Jane Doe defendants.

63. Additionally, Defendants' counsel knew or should have known that Plaintiffs would be seeking to name the individual John and Jane Doe defendants in this action. The caption in both cases name as defendants "POLICE OFFICERS JOHN AND JANE DOES 1-10," who "are all *sued* in their individual and official capacities," and are alleged to have "all acted within the scope of their employment." *See* DE 1 Caption; ¶¶ 9-11; 14-cv-0750, DE 1 Caption; ¶¶ 10-12. (emphasis added). The Complaints then refer to these individual SCPD personnel throughout the Complaints as "defendants," "defendant police officers," and "uniformed defendant police officers," and states that "Defendants John and Jane Does include supervisory personnel . . ." *See generally* DE 1; 14-cv-0750, DE 1. The identity of these individuals, as disclosed in documents Defendants produced to Plaintiffs, are the individuals whom Plaintiffs now seek to name. Lastly, during the initial conference before Magistrate Judge Brown, Plaintiffs' counsel requested that the court grant a longer deadline in which to amend the Complaint to name the individual Police Officer John and Jane Doe defendants given that Plaintiffs did not yet know their identities as Defendants had not yet responded to the first document demand Plaintiffs served in January as to the *Franqui* action. Plaintiffs thereby personally alerted Defendants' counsel that they will be seeking to name the individual John and Jane Doe defendants and named parties in this case.

64. Based upon the facts contained herein, and the legal arguments set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that this Court grant them leave to amend their Complaint, and to file their Proposed Amended Complaint annexed hereto as Exhibit A on all the defendants listed therein.

19

Dated: Mineola, New York
        January 1, 2015

                                        Respectfully,

                                          The Law Office of Anthony M. Grandinette
                                          Attorneys for Plaintiff
                                          114 Old Country Rd, Suite 420
                                          Mineola, New York 11501
                                          (516) 877-2889

                                  By:              /s/ MirelFisch_____
                                              MirelFisch, Esq.

CC: Counsel for Defendants via ECF