COPY

```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
                   ------------------------------------------X

                   JOAQUIN FRANQUI III, Administrator of the
                   ESTATE OF JACK FRANQUI IV,

                             Plaintiff,

                      -against-

                   THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
                   DEPARTMENT, POLICE OFFICER KAREN GRENIA, and
                   POLICE OFFICERS JOHN AND JANE DOES 1-10,

                             Defendants.
                   ------------------------------------------X

                   SIMON EARL, NICHOLAS EARL and ANNE EARL,

                             Plaintiffs,

                      -against-

                   THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
                   DEPARTMENT, POLICE OFFICER KAREN GRENIA,
                   POLICE OFFICERS JOHN AND JANE DOES 1-10,

                             Defendants.
                   ------------------------------------------X

                                  June 24, 2014
                                  10:00 a.m.


                         TESTIMONY OF KAREN GRENIA
```

2

EXAMINATION BEFORE TRIAL of KAREN GRENIA, one of the Defendants herein, taken by the Plaintiff, pursuant to Federal Rules of Civil Procedure and Notice, held at the above-mentioned time and place, before Dolly Fevola, Notary Public of the State of New York.

```
 1                                                            3

 2        A P P E A R A N C E S :

 3
          THE LAW OFFICE OF ANTHONY M. GRANDINETTE
 4             Attorney for the Plaintiff
               114 Old Country Road, Suite 420
 5             Mineola, New York 11501
          BY:  ANTHONY GRANDINETTE, ESQ.
 6             MIREL FISCH, ESQ.

 7        SUFFOLK COUNTY DEPARTMENT OF LAW
               Attorneys for the Defendants
 8             H. Lee Denison Building
               100 Veterans Memorial Highway
 9             Hauppauge, New York 11788
          BY:  ARLENE ZWILLING, ESQ.
10

11        ALSO PRESENT:

12        ALEXANDER CRAWFORD

13

14

15

16

17

18

19

20

21

22

23

24

25
```

FEVOLA REPORTING & TRANSCRIPTION INC. (631) 724-7576

```
                        K. Grenia              184
 2      A    Okay, so if you ask me a
 3  question, I'll answer it.
 4      Q    Based upon your knowledge of
 5  the case, as you sit here today, is it your
 6  testimony that nobody ever searched Simon
 7  Earl's house?
 8      A    Searched or went in?
 9      Q    Searched.
10      A    I don't have knowledge of that.
11  I left the scene.  I was not inside the
12  house.
13      Q    As you sit here today, do you
14  have any factual basis to know whether or
15  not any police officers entered Mr. Earl's
16  home?
17      A    Did they enter the home?
18      Q    Right.
19      A    Yes.
20      Q    Who entered Simon Earl's home?
21      A    I don't know all the officers.
22      Q    Tell me the names of those that
23  you know did enter the home.
24      A    PO Lesowitz, PO Robbins.
25  Again, that's two people, my coworkers.
```

```
                          K. Grenia                    185
 2        Q    Anybody else?
 3        A    There might have been.
 4        Q    But you're not sure or you
 5   don't recall?
 6             MS. ZWILLING:  What do you mean
 7        you don't recall?  She said she
 8        wasn't there.
 9             MR. GRANDINETTE:  If you have
10        an objection, just say it.  Let me
11        rephrase.
12        Q    You said that you did not
13   visualize anybody enter the home, right?
14        A    Yeah, because the house is set
15   so far back.  It's a long drive into the
16   house and no, I did not physically observe
17   anyone walk into the house.
18        Q    Whatever the reasons, you did
19   not make that observation while you were at
20   the scene, right?
21        A    Yes.
22        Q    But as you sit here today, you
23   know that certain officers did enter the
24   home, right?
25        A    Yes.
```

```
1                         K. Grenia              186
2           Q    You gave us two names, right?
3           A    Yes.
4           Q    How did you come to learn that
5    these officers went in the home?
6           A    They are my partners.  They
7    told me.
8           Q    They told you.  When did they
9    tell you that they entered Simon Earl's
10   home?
11          A    I don't recall.
12          Q    Can you tell me specifically
13   starting with Lesowitz, what she told you
14   with respect to her entering the home?
15               THE WITNESS:  Should I tell him
16        or they want to speak to her?
17               MS. ZWILLING:  If you remember,
18        you can mention it.
19          A    She just said to me to ID Simon
20   Earl.  He said the license was in the house
21   and he let them in the house.  We did not
22   know who Simon Earl was.  He did not have
23   his ID on his person.  The two of them --
24   Now we know he lives at 6 Cordwood.  They
25   could have been doing burglaries.  We did
```

FEVOLA REPORTING & TRANSCRIPTION INC. (631) 724-7576

```
                          K. Grenia              187
```

not know, in fact, they did not just burglarize that house, but he did invite Officer Lesowitz in the house.

    Q    Who invited Officer Lesowitz?

    A    Simon Earl, to provide his ID.

    Q    When did he extend this invitation, before or after he was handcuffed?

    A    That, I do not know.

    Q    Did she tell you that Simon invited her? Hey, come on inside. I have to get my driver's license, words to that effect?

    A    I don't know the exact words.

    Q    Tell me the best you recall.

    A    What I just told you.

    Q    So she was invited. Where did Simon Earl take her, if you know?

    A    I do not know that either.

    Q    When they got in the house, what happened?

    A    Again, I don't know all the -- I do not know.

    Q    During your conversation, did

```
1                          K. Grenia                 188
2     she say, yeah, then I went in the house and
3     the kid went and got his license, he shows
4     me, in fact, he did live there?
5          A    That's about the extent of it.
6          Q    Did she say where this
7     conversation took place?
8          A    No.
9          Q    Now, after this lawsuit that
10    you were served and you read, you understand
11    that there were allegations that the police
12    went in uninvited, right, with Simon Earl in
13    handcuffs in the back of the car and they
14    searched his house, right?  That's what the
15    allegations are, right?
16         A    That's what the allegations
17    are.
18         Q    After you read that, did you go
19    back to your co-worker and say, hey, and
20    have a conversation about those allegations?
21         A    No.
22         Q    You never brought that up to
23    her?
24         A    She's on maternity leave.  I'm
25    just curious, what would I bring up to her?
```

```
                           K. Grenia                189

     Q    My question is, did you ever
have a conversation with her about the
allegations contained in the complaint which
seem to be directly contradictory to what
Lesowitz told you happened?
     A    I have not had a conversation.
I have not gone into specifics.
     Q    Forget about specifics.  How
about just in general?  Did you ever discuss
with her in general?
     A    When I had a conversation with
her, he invited her in the house.  She even,
now that I recall, called his parents from
their home phone to let them know what was
going on to confirm that he did, in fact,
live there.  So if you could pull the tapes
from the house, that's the conversation.
     Q    Did you ever speak to her
after?
     A    After when?
     Q    Did you ever speak to her after
you got a copy of the Complaint?
     A    Once.
     Q    What did you discuss?  Did you
```

```
 1                        K. Grenia              190
 2   discuss the Complaint?
 3        A    We discussed that.  I don't
 4   remember because I have no recollection
 5   of -- I was not part of going to the house
 6   and that is what she told me.
 7        Q    But I'm talking about your
 8   conversation after receiving the Complaint.
 9   Do you recall what the conversation or don't
10   you recall?
11        A    I don't recall.
12        Q    Okay.  How did you learn about
13   Robbins entering the home?
14        A    I guess I spoke to him about
15   it.
16        Q    When?
17        A    I don't know.  A couple of
18   weeks ago.
19        Q    Was that the first time that he
20   told you that he had ever been in the house?
21        A    Yeah.  It does not really come
22   up in conversation.
23        Q    What did he tell you a couple
24   of weeks ago about it?
25        A    Kind of the same thing, that
```

```
                              K. Grenia                      396
 1
 2           MR. GRANDINETTE:  I guess we'll
 3       get these exhibits copied and off to
 4       you.
 5           MS. ZWILLING:  Okay.
 6           (Time noted:  5:45 p.m.)
 7
 8
 9
                     _____
10                         KAREN GRENIA
11
12   Subscribed and sworn to before me
13   this ___ day of _____, 2014.
14
15
16
     _____
17   NOTARY PUBLIC
18
19
20
21
22
23
24
25
```